Ex parte Paul WOODWARD.

No. 64644.

Court of Criminal Appeals of Texas,
Panel No. 1.

July 16, 1980.

Richard Banks and Thomas M. Booker, Austin, for appellant.

Ronald Earle, Dist. Atty., and Philip A. Nelson, Jr., Asst. Dist. Atty., Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and PHILLIPS and CLINTON, JJ.

## OPINION

ONION, Presiding Judge.

This appeal is taken from a denial of relief requested under a pretrial application for a writ of habeas corpus. Petitioner stands charged by indictment with the offense of capital murder, V.T.C.A., Penal Code, § 19.03. After hearing, the trial court denied bail, under authority of Tex. Const., Article I, § 11. This appeal ensued.

The constitutional provision requires that bail be set upon sufficient sureties for all prisoners, "unless for capital offenses, when the proof is evident. . . ." *Id.* By two grounds of error, petitioner first contends that the State's proof is not "evident," because the alleged murder weapon was seized in an illegal stop and search of petitioner's automobile. He also contends that there is no proof evident that a capital murder took place, because there was insufficient proof that a burglary took place, in the course of which the deceased was killed. We shall limit our discussion to the second ground of error.

As here relevant, the original indictment[1] alleges that petitioner, on March 15, 1980, intentionally caused the death of the deceased "in the course of committing and attempting to commit the offense of burglary." The record indicates that other than the deceased and her killer, there were no eyewitnesses to the shooting.

In V.T.C.A., Penal Code, § 19.02(a)(1), murder is defined as follows: "A person commits an offense if he: (1) intentionally or knowingly causes the death of an individual." The offense becomes capital murder under V.T.C.A., Penal Code, § 19.-03(a)(2), if the murder is intentionally committed "in the course of committing or attempting to commit kidnapping, *burglary*, robbery, aggravated robbery, or arson (emphasis supplied)."

The State's theory is that the location of the three spent cartridge casings near the body of the deceased suggests that the killer had intruded the murder weapon and perhaps part or all of his person across the threshold of the deceased's residence. This in turn, goes the argument, would be sufficient under V.T.C.A., Penal Code, §§ 30.-02(a)(1) and 30.02(b)(1) and (2), to constitute a burglary. Further, argues the State, there was evidence to suggest that the burglary was made with specific intent to commit the felony of retaliation against the deceased, see V.T.C.A., Penal Code, § 36.06. This is alleged to be so because the deceased was to testify against petitioner in a criminal mischief case in Hunt County during the month of April. He had tried unsuccessfully on prior occasions to induce her to drop the charges.

■ In a capital murder case, the burden of showing "proof evident" that the accused committed the offense and will be sentenced to death is upon the State. *Ex parte Ott*, 565 S.W.2d 540 (Tex.Cr.App. 1978); *Ex parte Hammond*, 540 S.W.2d 328 (Tex.Cr.App.1976). Thus, in the instant case, the State had the burden to show not only proof evident that petitioner murdered the deceased, but also proof evident that he did so in the course of burglarizing her habitation.

■ The State contends that the record of the habeas corpus hearing reflects "some evidence" of a burglary, relying on the theory already outlined. Fred Rymer testified for the State as an expert in the performance characteristics of firearms. He stated that extraction tests had been run on the pistol believed to be the murder weapon, to determine in what pattern spent shell casings were ejected from the weapon. Two

---

1. By supplemental transcript, we are advised that petitioner was subsequently reindicted, and that the burglary allegation was further specified as having been committed with intent to commit the felonies of aggravated assault and retaliation. In light of our disposition of this case, such fact does not change our analysis.

tests were run, one with the pistol held extended at arm's length and shoulder height, with the pistol being approximately 30 inches from the firer's body. The other test firing was done with the weapon held with the elbow at the shooter's hip, with the weapon approximately 15 inches away from the shooter.

In the first test, the ejected casings landed in an area generally four feet behind and on a diagonal five feet to the right of the ejection port on the right side of the pistol. In the firings done from the hip, the casings landed approximately four feet to the rear, and at a diagonal approximately six feet to the right from the pistol.

In addition to these facts, the State points to the following: the position of the deceased's body upon discovery, lying perpendicular to the doorway, with her feet 10 to 12 inches from the doorway; the discovery of two spent cartridge casings at her feet; and the discovery of one spent cartridge casing underneath the body, near the midsection. The State contends that these facts, taken with the results of the extraction tests, show a burglarious entry.

It is important to point out, however, that the State's firearms expert, Mr. Rymer, declined to state an opinion, based on this information, as to whether the murderer was inside or outside the apartment when the shots were fired. He stated that further testing, especially of the deceased's clothing for chemical residues that might help determine the distance from which she was shot, would be necessary before he could give such an opinion. Otherwise, he stated, "[I]t would be hard to arrive at an opinion." There was no other evidence offered to substantiate a burglary having taken place. The State, however, suggests that we should disregard witness Rymer's indecision and independently find that these facts support a finding of proof evident.

We decline to supplant the testimony of the State's expert with a conclusion of our own to the contrary. Given his cautious professional indecision on the matter, we need not engage in a detailed evidentiary analysis. Nor would such discussion be ap-propriate, prior to a trial on the merits, *Ex parte Davis*, 542 S.W.2d 192, 198 (Tex.Cr. App.1976); *Ex parte Sierra*, 514 S.W.2d 760, 761 (Tex.Cr.App.1974). Under these circumstances, we find that proof of capital murder is not evident on this state of the record, and that bail was erroneously denied.

Since no evidence was offered on the question of the amount of bond that might otherwise be fixed, we remand this case with instructions that such a hearing be conducted. The hearing shall be governed by Article 17.15, V.A.C.C.P., and after such hearing bail shall be set in a reasonable amount.

The order denying the application for habeas corpus is vacated, and the cause is remanded for determination of reasonable bail, in accordance with the instructions stated herein.

It is so ordered.